# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-61984-CIV-ROSENBAUM (CONSENT)

200 LESLIE CONDOMINIUM
ASSOCIATION, INC.,

       Plaintiff,

v.

QBE INSURANCE CORP.,

       Defendant.

_____/

### <u>ORDER</u>

    This matter comes before the Court upon Defendant QBE Insurance Corporation's Motion to Dismiss Second Amended Complaint and Motion for Entry of a Stay [D.E. 31]. The Court has reviewed Defendant's Motion, all filings in support thereof and in opposition thereto, and the entire record in this matter and is otherwise duly advised in the premises. The Court has also heard oral argument on Defendant's Motion. After careful consideration of argument and the materials in the record, the Court now grants in part and denies in part Defendant's Motion to Dismiss and grants Defendant's Motion to Stay for the reasons set forth below, and dismisses without prejudice Counts I and II of the Second Amended Complaint.

### *I.  Background*

#### *A.  Factual Background*

    This matter arises out of Plaintiff 200 Leslie Condominium Association, Inc.'s ("200 Leslie") insurance claim filed with Defendant QBE Insurance Corporation ("QBE") for losses that Hurricane

Wilma inflicted.  According to the Second Amended Complaint, 200 Leslie suffered damages on

October 24, 2005, when Hurricane Wilma struck South Florida.  D.E. 30 at ¶¶ 9-10.  At that time,

the Second Amended Complaint continues, 200 Leslie had in place an insurance policy with QBE.

*Id.* at ¶ 9.

Following the hurricane, 200 Leslie promptly notified QBE of the losses that it had sustained

as a result of Hurricane Wilma.  *Id.* at ¶¶ 12, 14.  By October 27, 2005, QBE had assigned 200

Leslie's loss a claim number.  *Id.* at ¶ 14.

The Second Amended Complaint further alleges that QBE then assigned Interloss, Inc., an

independent contractor serving as an independent adjuster for QBE, to 200 Leslie's claim file.[1]  *Id.*

at ¶ 17.  Interloss inspected 200 Leslie's property and determined that the amount of 200 Leslie's

covered loss did not exceed its deductible under the QBE policy.  *Id.*  Adopting Interloss's position

concerning the amount of 200 Leslie's loss, QBE issued a letter dated December 9, 2005, to 200

Leslie, stating, "[O]ur claims adjuster has inspected your Hurricane Wilma damages and determined

that the cost of repairs will not exceed your hurricane insurance policy deductible.  Therefore, we

can not respond to your claim. . . .  Please contact the undersigned if you have any questions or need

---

[1]Regarding these allegations, the Second Amended Complaint cites to 200 Leslie's Civil Remedy Notice and QBE's response to that Notice and purports to attach these documents to the Second Amended Complaint as Exhibits A and B, respectively.  *See* D.E. 30 at ¶ 17.  A review of the docket sheet, however, shows that the letters are not appended to the Second Amended Complaint.  Nevertheless, they are within the record as exhibits to the First Amended Complaint.  *See* D.E. 13-1 and D.E. 13-2.  Under these circumstances, and because 200 Leslie has requested such treatment, *see* D.E. 39 at 10 n.3, although these documents are not attached to the Second Amended Complaint, the court construes their omission as the equivalent of a scrivener's error and considers the letters as though they were actually filed as exhibits to the Second Amended Complaint.  As a result, the Court accords these documents the status required by Rule 10(c), Fed. R. Civ. P., which provides, in relevant part, that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

-2-

any further assistance." *Id.* at ¶ 18; D.E. 13-2 at 2.

Neither the Second Amended Complaint nor any other part of the record indicates that 200 Leslie further contacted QBE until nearly five years later — on October 18, 2010 — when 200 Leslie filed this lawsuit against QBE. *See* D.E. 1.  That same date, 200 Leslie also filed a Civil Remedy Notice ("CRN") with the State of Florida Department of Financial Services.  In the CRN, 200 Leslie cited "claim denial" and "claim delay" as the reasons for the CRN.  D.E. 13-1 at 2.  It further elaborated on its position, complaining that QBE never shared any estimate of 200 Leslie's loss with 200 Leslie.  *Id.* at 3.  In addition, 200 Leslie demanded appraisal of its claim and contended that the windstorm deductible in its policy with QBE is void for failure to comply with Fla. Stat. § 627.701(4)(A).  *Id.*  Ultimately, 200 Leslie sought through its CRN a "full[] evaluat[ion] [of] [200 Leslie's] loss and . . . payment that reasonably reflects the amount of covered damage in excess of the deductible."  *Id.*

## B.  Procedural History

Similarly, in the original Complaint filed in this action, 200 Leslie sought a declaratory judgment stating, among other conclusions, that (1) 200 Leslie's Hurricane Wilma loss is covered under its QBE insurance policy; (2) QBE is obligated to determine the amount of 200 Leslie's covered Hurricane Wilma loss immediately; (3) QBE must disclose to 200 Leslie how QBE determined the amount of 200 Leslie's Hurricane Wilma loss; and (4) if the parties cannot agree regarding the amount of covered damage that 200 Leslie sustained, the parties must engage in the appraisal process set forth in the insurance policy.  *See* D.E. 1 at 7.  Although the caption of Count I, the count seeking this relief, summarized the claim as "seeking a declaratory judgment concerning coverage for windows and sliding glass doors, QBE's duty to adjust Plaintiff's loss, and Plaintiff[s]

-3-

right to have the disputes concerning the amount of loss resol[v]ed through appraisal," neither the body of Count I nor the prayer for relief in Count I referred even once to "windows and sliding glass doors." *See id.* Similarly, nothing else in the original Complaint mentioned anything about glass windows and doors. Count II of the original Complaint challenged the windstorm deductible for failure to comply with Fla. Stat. § 627.701(4)(A). *Id.* at 8-9.

QBE responded to the original Complaint by filing a Motion to Dismiss. *See* D.E. 11. In its Motion to Dismiss, QBE argued that the Court should dismiss Count I because it failed to allege a justiciable controversy under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and 200 Leslie's demand for appraisal was premature. *See id.* at 3-12. As to Count II, QBE suggested that the Court should stay the action because in *Chalfonte Condo. Apartment Ass'n v. QBE Ins. Corp.*, 561 F.3d 1267 (11th Cir. 2009), the Eleventh Circuit had certified to the Florida Supreme Court the issue of state law interpretation that Count II raised, and the case was still pending. *Id.* at 12-15.

200 Leslie filed its First Amended Complaint in response to QBE's Motion to Dismiss the original Complaint. *See* D.E. 13. In Count I, the First Amended Complaint sought a declaratory judgment stating, among other conclusions, that (1) 200 Leslie's Hurricane Wilma loss is covered under its QBE insurance policy and (2) QBE must engage in the appraisal process set forth in the insurance policy and immediately select an appraiser. *See id.* at 7. Unlike the caption of Count I in the original Complaint, the caption of Count I in the First Amended Complaint made no reference to windows and doors, and nothing in the rest of the First Amended Complaint referred to windows and doors, either. *See id.* at 4-7. Count II of the First Amended Complaint remained essentially the same as Count II of the original Complaint. *See id.* at 7-9.

Once again, QBE sought to dismiss Count I and stay Count II. *See* D.E. 21. In response, 200

-4-

Leslie moved for leave to file its Second Amended Complaint, which the Honorable William J. Zloch granted on March 15, 2011.[2]  *See* D.E. 18, D.E. 29.  The Second Amended Complaint sets forth three claims: Count I, which seeks a declaratory judgment establishing that "hurricane damage to glass windows and sliding glass doors that provide access to a single condominium unit are covered" under the insurance policy; Count II, which seeks a declaratory judgment holding that 700 Leslie is "entitled to have the dispute concerning the amount of its Hurricane Wilma loss resolved through the appraisal process" and that QBE must immediately participate in that process; and Count III, which seeks a declaratory judgment finding the hurricane deductible in the policy to be void.  *See* D.E. 30.  Comparison of the Second Amended Complaint to the First Amended Complaint reveals that Counts II and III of the Second Amended Complaint are very similar to Counts I and II, respectively, of the First Amended Complaint.  Count I, however, appears to be entirely new, except for the fact that Count I in the original Complaint referenced "windows and sliding glass doors" in the explanatory caption for that count.

Unlike Count I in the original Complaint, though, Count I in the Second Amended Complaint does include some discussion of windows and sliding glass doors in the body.  More specifically, the Second Amended Complaint avers that, among other losses, 200 Leslie's property endured damages to glass windows and sliding glass doors that provide access to a single condominium unit. *See id.* at ¶ 24.  According to the Second Amended Complaint, the amount of the covered damage to the glass windows and sliding glass doors alone totaled more than the hurricane deductible in 200 Leslie's insurance policy with QBE.  *Id.* at ¶ 25.  200 Leslie alleges, however, that QBE "did not

---

[2]On April 7, 2011, Judge Zloch signed the parties' Consent to Magistrate Judge Jurisdiction [D.E. 22], and the matter was transferred to me for further disposition.  *See* D.E. 34.

consider glass windows and sliding glass doors when it determined that the amount of [200 Leslie's] covered Hurricane Wilma loss was less than the applicable hurricane deductible." *Id.* at ¶ 26.  Based on this assertion, as well as 200 Leslie's averment that QBE "has frequently taken the position in the past that windows and sliding glass doors are not covered under the QBE condominium association policy form that was in effect when Hurricane Wilma struck," 200 Leslie claims, it "is in doubt concerning its right to coverage for the hurricane damage to its glass windows and sliding glass doors." *Id.* at ¶ 28.  Accordingly, 200 Leslie seeks a declaratory judgment holding that such damages are covered by 200 Leslie's insurance policy.  *Id.* at ¶¶ 28, 29.

In Count II, 200 Leslie alleges that QBE "has never taken a position concerning the precise amount of [200 Leslie's] claim.  QBE simply concluded that the unspecified amount of the covered damage was less than the deductible that QBE believed to be applicable." *Id.* at ¶ 31.  Count II continues, asserting that 200 Leslie advised QBE by letter dated October 19, 2010, that it disagreed with QBE that 200 Leslie's insured loss fell under the deductible and that it demanded resolution of the dispute over the loss amount through the appraisal procedure detailed in the insurance policy. *Id.* at ¶ 33.  The Second Amended Complaint sets forth the appraisal provision contained in the insurance policy as follows:

**2.  Appraisal**

If we and you disagree on the value of the property of[3] the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court

---

[3]The Second Amended Complaint uses the word "of" here, although perhaps the policy actually states "or."  The Court cannot be certain, however, because the Second Amended Complaint does not attach a copy of the policy to it.

having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their difference to the umpire.  A decision agreed to by any two will be binding.  Each party will:

    a.       Pay its chosen appraiser; and

    b.       Bear the other expenses of the appraisal and umpire equally.

*Id.* at ¶ 37.  Referring to the October 19, 2010, letter, 200 Leslie contends in Count II of the Second Amended Complaint that it has demanded an appraisal of its loss under the provision quoted above. *Id.* at ¶ 40.  Because, according to the Second Amended Complaint, QBE has "wholly failed to respond to that demand, to select an appraiser, or otherwise participate in the contractual appraisal process," *id.* at ¶ 40, 200 Leslie avers that it is "in doubt concerning its right to have the dispute concerning the amount of its loss resolved through appraisal" and requests a declaratory judgment concluding that QBE must immediately participate in the appraisal process.  *Id.* at ¶ 42.

Finally, as in the first two iterations of the complaint in this case, Count III seeks a declaratory judgment establishing that the hurricane deductible in 200 Leslie's insurance policy with QBE violates Fla. Stat. 627.701(4)(a), and, thus, is invalid.

As it did with the original Complaint and the First Amended Complaint, QBE has responded to the Second Amended Complaint by filing a Motion to Dismiss and Motion to Stay [D.E. 31] seeking to dismiss Count I as non-justiciable and Count II as premature and to stay Count III of the Second Amended Complaint until the Florida Supreme Court has issued its ruling in *Chalfonte*.  The Court granted 200 Leslie's Motion for Hearing on QBE's Motion to Dismiss and heard oral argument on QBE's Motion.  The matter is now ripe for decision.

## II.  Analysis

### A.  Standard on a Motion to Dismiss

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss for failure to state a claim.  That rule provides, in relevant part,

> **(b)** **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(6)** failure to state a claim upon which relief can be granted; . . . .

*Id.* Thus, the Court considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Similarly, "naked assertion[s]" bereft of "further factual enhancement" do not suffice. *Twombly*, 550 U.S. at 555, 557.  As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true. *Bell v. J.B. Hunt Transp., Inc.*, 2011 WL 1935557, *2 (11th Cir. May 20, 2011)

-8-

(citing *Hishon v. King & Spalding*, 467 U.S. 69, 72 (1984)).   But "[c]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Id.* (quoting *Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1263 (11th Cir. 2004)) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-51 (2009).   In short, the allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

B.  *The Appropriate Declaratory Judgment Statute*

200 Leslie relies in its Second Amended Complaint on Fla. Stat. § 86.011 as a basis for seeking declaratory relief against QBE in this matter.   *See* D.E. 30 at ¶ 1.   Section 86.011, which contains Florida's version of the Declaratory Judgment Act, appears in Chapter 86 of Title VI of the Florida Statutes.   Title VI, in turn, is entitled, "Civil Practice and Procedure."   As Judge Graham in this District has previously noted, Chapter 86 of the Florida Statutes "confers subject matter jurisdiction on Florida circuit and county courts.   There is nothing in this particular statutory provision that confers any substantive rights."   *Nirvana Condo. Ass'n v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 n.1 (S.D. Fla. 2008).

The instant matter, however, is premised on diversity jurisdiction.   Consequently, the Court applies federal law to procedural issues.   *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).   As a result, the Court must consider 200 Leslie's claims under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, not Florida's version of the Declaratory Judgment Act.   *See Nirvana Condo. Ass'n*, 589 F. Supp. 2d at 1343 n.1; *Strubel v. Hartford Ins. Co. of the Midwest*, 2010 WL 745616, *2 (M.D. Fla. Feb. 26, 2010); *see also Am.*

*Ins. Co. v. Evercare Co.*, 2011 WL 2344147, *2 (11ᵗʰ Cir. June 15, 2011) ("the operation of the Declaratory Judgment Act is procedural only") (citation and internal quotation marks omitted). Accordingly, the Court construes the Second Amended Complaint to seek relief under the federal Declaratory Judgment Act.

*C.  The Separate Counts*

1.  Count I

The federal Declaratory Judgment Act authorizes courts of the United States to "declare the rights and other legal relations of any interested party," but only "[i]n a case of actual controversy." 28 U.S.C. § 2201(a).  Thus, "[i]n all cases arising under the Declaratory Judgment Act . . . , the threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. and Surety Co.*, 68 F.3d 409, 414 (11ᵗʰ Cir. 1995) ("*Atlanta Gas*") (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941); *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus*, 931 F.2d 744, 747 (11ᵗʰ Cir. 1991)).  For a case to satisfy justiciability requirements, the party invoking federal court jurisdiction "must show, at an 'irreducible minimum,' that at the time the complaint was filed, he ha[d] suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.* (citing *Caulkins Indiantown Citrus*, 931 F.2d at 747 (citations omitted)).

Here, QBE contends that no justiciable controversy exists with regard to Count I because the Second Amended Complaint does not allege that "before filing this case, [200 Leslie] expressed disagreement with QBE's adjustment of the initial claim or that QBE ever took the position that the windows and sliding-glass doors were not covered under the policy." D.E. 31 at 4.  According to

QBE, "Without notice to, and an adversarial response from, QBE regarding coverage for the windows and sliding-glass doors, no case or controversy exists." *Id.* at 4-5.

In support of its position, QBE relies upon *Atlanta Gas*, 68 F.3d 409.  In *Atlanta Gas*, Atlanta Gas Light Company ("Atlanta Gas") sought a declaratory judgment regarding the extent of its insurers' liability for environmental cleanup costs arising out of several of its former manufactured gas plants.  Prior to filing suit, Atlanta Gas had hired experts to advise it regarding the scope of potential environmental liability after the Environmental Protection Agency had raised "concerns" about several of Atlanta Gas's former facilities.  After the experts advised Atlanta Gas that they had estimated that Atlanta Gas had potential multi-million-dollar liability exposure, federal and state environmental agencies began ramping up enforcement and cleanup requirements for facilities like those that Atlanta Gas had previously run.  As a result, Atlanta Gas investigated its insurance policies during the periods when the former facilities had been in operation and sent notices to 23 insurers that had issued policies to Atlanta Gas of their potential liability for cleanup costs at Atlanta Gas's former facilities.  At the time that Atlanta Gas mailed the notices, it had incurred no cleanup costs for which it sought reimbursement; no environmental agency had ordered a cleanup at any of the sites; and no subsequent owners of the facilities, adjacent property owners, or other third parties had filed claims against Atlanta Gas for recovery of any cleanup costs.

Atlanta Gas filed its federal declaratory judgment action the day after it mailed the notices to its insurers.  Noting that the insurers "not only had no chance to respond to [Atlanta Gas's] notice before the complaint was filed, they had no knowledge that notice had been given," the Eleventh Circuit opined that "[i]t is . . . difficult to understand how [Atlanta Gas] could assert that the insurance companies had failed to defend or indemnify it for cleanup . . . when the insurers had taken

no position at that time with regard to their duties under [Atlanta Gas's] policies." *Id.* at 415. The Eleventh Circuit likewise rejected Atlanta Gas's efforts to buttress their justiciability argument by claiming that the insurers had denied coverage to similar utilities under similar circumstances in the past. *Id.* In this regard, the court explained that positions taken by insurers in other cases could not create a justiciable controversy with respect to the insurer's relationship with Atlanta Gas.

For its part, 200 Leslie argues that *Atlanta Gas* is distinguishable because in the pending case, unlike in *Atlanta Gas*, the Second Amended Complaint "alleges that Plaintiff ' . . . promptly notified QBE of its [October 24[,] 2005][,] Hurricane Wilma loss.'" D.E. 39 at 5 (quoting D.E. 30 at ¶ 12). This Court agrees that, to some extent, *Atlanta Gas* is materially different. As the Eleventh Circuit noted in *Atlanta Gas*, at the time that Atlanta Gas filed its complaint, "it was not clear that state and federal environmental agencies would ever require cleanups at any of [Atlanta Gas's] former [facilities]." *Atlanta Gas*, 68 F.3d at 415. In other words, no certainty existed that Atlanta Gas would ever even incur a loss for which it would seek to file an insurance claim.

That, of course, is not the situation here. In this case, 200 Leslie asserts that it did, in fact, suffer an insured loss. *See* D.E. 30 at ¶¶ 9-14. Moreover, unlike Atlanta Gas, 200 Leslie alleges that it made a claim on its QBE insurance policy. *See id.* at ¶¶ 12-14. Finally, 200 Leslie avers that instead of paying the claim, QBE determined that "the amount of Plaintiff's covered loss was less than the amount of the hurricane deductible that QBE believed applied." *Id.* at ¶ 17. Thus, whereas Atlanta Gas had suffered no cognizable injury at the time that it filed its complaint because it had not yet experienced a loss and no impending threat of loss existed at that time, 200 Leslie had suffered an actual injury prior to filing not only the Second Amended Complaint but even the original Complaint.

Yet despite the material differences between *Atlanta Gas* and the case before this Court with regard to the injury requirement, 200 Leslie's Second Amended Complaint remains deficient from a justiciability standpoint.  This results principally from the fact that as currently charged, Count I does not set forth an injury likely to be redressed by the declaratory judgment that 200 Leslie requests.  In other words, the injury alleged in Count I does not match the relief sought by that count. As noted previously, 200 Leslie seeks a declaratory judgment establishing that "hurricane damage to glass windows and sliding glass doors that provide access to a single condominium unit are covered property under the subject QBE insurance policy."  D.E. 30 at ¶ 29.a.  But, as in *Atlanta Gas*, where the insurers had not taken the position that Atlanta Gas's anticipated losses were not covered under Atlanta Gas's insurance policies, 200 Leslie has not alleged sufficient facts to demonstrate that QBE has ever taken the position in this case that glass windows and doors are not covered by 200 Leslie's insurance policy.  As a result, like Atlanta Gas, 200 Leslie has failed to show a likelihood that a declaratory judgment that finds glass windows and doors to be covered under the policy will remedy 200 Leslie's injury and result in the payment of 200 Leslie's denied claim.

Nor do any of the following allegations that 200 Leslie sets forth correct the situation:

> 24.  The damage that Hurricane Wilma caused to Plaintiff's insured property included, but was not limited to, damage to glass windows and sliding glass doors that provide access to a single condominium unit.

> 25.  The amount of the covered damage to the glass windows and sliding glass doors alone was more than the amount [of the] hurricane deductible.

> 26.  However, QBE did not consider glass windows and sliding glass doors when it determined that the amount of Plaintiff's covered Hurricane Wilma loss was less than the applicable hurricane deduction.

28.     Because QBE failed to include windows and sliding glass
doors in its initial evaluation of Plaintiff's loss, and because
it has frequently taken the position in the past that windows
and sliding glass doors are not covered under the QBE
condominium association policy form that was in effect when
Hurricane Wilma struck, Plaintiff is in doubt concerning its
right to coverage for the hurricane damage to its glass
windows and sliding glass doors.

D.E. 30.  First, the allegations that QBE "did not consider" and "failed to include" windows and

sliding glass doors when it calculated 200 Leslie's covered loss are not tantamount to asserting that

QBE took the position that windows and doors were not covered by the policy in this case.  Even

accounting for 200 Leslie's contentions as true as the Court must when considering a motion to

dismiss, 200 Leslie does not assert a basis for why QBE allegedly "did not consider" and "failed to

include" windows and sliding glass doors in determining 200 Leslie's covered loss.  Based on the

allegations in the Second Amended Complaint, such an alleged failure to consider or include glass

doors and windows could have resulted from an error on the part of the independent contractor who

examined the damage, a determination by the independent contractor or by QBE that the damage to

the glass windows and doors was not inflicted by Hurricane Wilma, or other similar circumstances.

Moreover, even accepting as true 200 Leslie's averment that the amount of the damage to the

glass windows and doors exceeded the deductible, this does not change the analysis.  The inference

200 Leslie presumably seeks for the reader to draw from this contention is that QBE must have

construed the policy to preclude coverage of glass windows and doors.  As with the other allegations,

however, the intended inference does not necessarily follow.  Among other possible fair inferences,

the independent adjuster or QBE could have valued the damage lower than 200 Leslie, the

independent adjuster or QBE could have made a mathematical error in totaling the alleged damage

-14-

to the property, or the independent adjuster or QBE could have concluded that only some of the glass windows and doors for which 200 Leslie sought coverage were damaged by Hurricane Wilma.

We don't know why QBE concluded that 200 Leslie's Hurricane Wilma loss fell under the deductible — and we have no way of knowing or even fairly surmising — based on the allegations in the Second Amended Complaint. Furthermore, the allegations in the Second Amended Complaint and in the documents purportedly attached to it suggest that the reason 200 Leslie cannot fairly allege that QBE took the position that 200 Leslie's policy did not cover glass windows and doors is that once QBE advised 200 Leslie that it had concluded that 200 Leslie's claim did not exceed the deductible, 200 Leslie took no further action until filing this lawsuit and the CRN a week before the statute of limitations ran. 200 Leslie did not in any way attempt to question or challenge QBE about the basis for the effective denial, so 200 Leslie itself appears not to know why QBE determined that 200 Leslie's claim did not exceed the deductible.

In fact, the CRN that 200 Leslie filed simultaneously with this action and referenced as an exhibit to the Second Amended Complaint, the different iterations of the complaint in this case, and Footnote 2 in 200 Leslie's Opposition to QBE's Motion to Dismiss all illustrate 200 Leslie's lack of knowledge regarding why QBE found 200 Leslie's claim to be under the deductible. More specifically, the CRN does not mention at all any purported position on the part of QBE that glass windows and doors are not covered by 200 Leslie's policy.

Similarly, with the exception of the reference to glass windows and doors in the caption of Count I of the original Complaint in this case (what appears to be an unintentional inclusion left over from a form used in another insurance complaint in an unrelated case), the original Complaint likewise failed to allege that QBE's effective denial of 200 Leslie's claim was attributable to QBE's

-15-

purported position that glass doors and windows were not covered under 200 Leslie's policy.  To the contrary, the original Complaint effectively conceded that 200 Leslie does not know whether QBE took the position that glass doors and windows were not covered by the policy in that it actually seeks a declaratory judgment requiring QBE to disclose *how* QBE determined the amount of 200 Leslie's Hurricane Wilma loss.  As for the First Amended Complaint, it did not refer to glass windows and doors at all, instead seeking a declaratory judgment that 200 Leslie's Hurricane Wilma damages are simply covered.

Finally, Footnote 2 of 200 Leslie's Opposition to QBE's Motion to Dismiss the Second Amended Complaint states that QBE's initial disclosures in this case, served April 4, 2011, "suggest[] that QBE may in fact have included some unit owner windows and sliding glass doors when it first addressed Plaintiff's claim."  D.E. 39 at 7 n.2.  While 200 Leslie has since suggested otherwise, the inclusion of this supposition in a document filed on April 25, 2011 — more than a month after 200 Leslie filed its Second Amended Complaint — indicates that 200 Leslie did not know or have a basis for alleging at the time that it filed the Second Amended Complaint, that QBE had declared 200 Leslie's claim below the deductible because it did not consider glass windows and doors to be covered under the policy, and, thus, 200 Leslie was careful not to make such an allegation in the Second Amended Complaint.

This lack of allegations that QBE took the position that glass windows and doors were not covered by the policy presents an insurmountable problem because it means that 200 Leslie has not met its burden to allege a justiciable claim at the time that it filed this case — or even when it filed the Second Amended Complaint.  In particular, QBE has failed to satisfy its burden to demonstrate that a declaratory judgment establishing that glass windows and doors are covered by QBE's policy

is likely to redress the injury of which 200 Leslie complains. Put simply, even if the Court issued the declaratory judgment 200 Leslie requests and QBE complies with that judgment, such a situation would not necessarily be likely to result in payment by QBE of 200 Leslie's insurance claim.

200 Leslie's further assertions that QBE "has frequently taken the position in the past that windows and sliding glass doors are not covered" under policies that other QBE customers have had similarly cannot establish the required redressability for purposes of the alleged dispute between 200 Leslie and QBE. As the Eleventh Circuit explained in *Atlanta Gas*, "Regardless of how well-founded [the plaintiff's] concerns about its insurers may have been, speculation based on the insurance companies' dealings with other insureds does not present a concrete case or controversy" as it regards the parties presently before the Court. *Atlanta Gas*, 68 F.3d at 415. For these reasons, Count I does not plead adequate allegations to establish justiciability, and QBE's Motion to Dismiss as it relates to Count I must be granted.

The Court declines, however, to dismiss the case with prejudice at this time. Rule 15(a), Fed. R. Civ. P., provides that after 21 days following service of a pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Here, QBE does not agree to 200 Leslie's filing of an amended pleading. The Court therefore reviews the considerations for granting leave to amend, as 200 Leslie has asked in the alternative for such permission.

Under the Rule 15(a) standard, "[a] district court's discretion to dismiss a complaint without leave to amend 'is "severely restrict[ed]" by Fed. R. Civ. P. 15(a) . . . .'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citations omitted). As the Eleventh Circuit has recognized, "Generally, '[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one

-17-

chance to amend the complaint before the district court dismisses the action with prejudice.'" *Id.*
(citation omitted).  Only three exceptions to this rule exist: a district court does not have to permit
an amendment "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure
to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause
undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (citing *Foman
v. Davis*, 371 U.S. 178, 182 (1962)).  Here, QBE argues that the Court should not permit 200 Leslie
to amend Count I because 200 Leslie has failed more than once to remedy problems in Count I by
amendments already permitted, and any proposed amendments would be futile since "justiciability
is tested at the time the complaint is filed."  D.E. 45 at 6 (citing *Atlanta Gas*, 68 F.3d at 414).

Beginning with the second argument first, the Court agrees with QBE that courts consider
whether there is a justiciable controversy as of the time that the complaint is filed.  That fact,
however, does not necessarily preclude the existence of justiciability in this case.  In *Atlanta Gas*,
where the court stated that it measures justiciability at the time that the complaint is filed, the
Eleventh Circuit further noted, "It appears that events that have transpired since the complaint was
filed could give rise to justiciable claims with regard to some or all of [Atlanta Gas's] former . . .
sites, under some or all of [Atlanta Gas's] insurance policies."  68 F.3d at 415 n.12.  Although the
court pointed out that Atlanta Gas never sought to amend its pleadings to take these changes into
account, the court nonetheless went on to cite Rule 15(d), Fed. R. Civ. P., as "permit[ting] the filing
of supplemental pleadings in order to assert claims maturing after the filing of the complaint."  *Id.*
In other words, the Eleventh Circuit recognized that although a controversy might not be justiciable
as of the filing of the initial complaint, it can become justiciable subsequently, and, if an appropriate
pleading is filed after the matter becomes justiciable, that pleading may be able to survive

-18-

justiciability testing.  Consequently, the fact that the claim alleged in Count I was not justiciable as pled as of the filing of the initial Complaint (or even the Second Amended Complaint) does not necessarily preclude the matter from becoming justiciable before another amended pleading may be filed.[4]

Moreover, at the June 1, 2011, hearing on the Motion to Dismiss, 200 Leslie suggested that through discovery, it had obtained evidence indicating that QBE had taken the position that glass windows and doors were not covered under 200 Leslie's policy.  If this were true, 200 Leslie might be able to allege a justiciable controversy under Count I.  In short, the Court cannot definitively find at this time that amendment of Count I would be futile.

As to QBE's assertion that 200 Leslie has already enjoyed repeated opportunities to amend its complaint, this Court acknowledges that the Eleventh Circuit has held that district courts may dismiss claims with prejudice where a plaintiff repeatedly fails to plead a sufficient claim.  *Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995).  In this case, 200 Leslie amended its complaint once of right under Rule 15(a)(1)(B), and once after Judge Zloch granted 200 Leslie's Motion for Leave to File Its Second Amended Complaint [D.E. 29].  Although 200 Leslie enjoyed the benefit of the reasoning of QBE's motions to dismiss at the times that it filed the amended complaints, the Court had not yet opined on the viability of the previous iterations of 200 Leslie's complaints.  Under these circumstances, the Court does not find the prior amendments to be excessive, so the Court declines to preclude 200 Leslie from seeking to amend Count I simply because it has already tried twice. Nevertheless, filing several versions of the complaint does impose additional burdens on both

_____

[4]The Court does not opine at this time on whether some other issue, such as the statute of limitations, might render amendment futile, as the parties have not briefed this issue.

Defendant and the Court.  For these reasons, and because the Court has now set forth its basis for dismissing the Second Amended Complaint, the Court cautions 200 Leslie that it is unlikely to allow a fourth amended complaint.  Consequently, should 200 Leslie wish to seek leave to file a third amended complaint, it should exercise great care in setting forth its causes of action.

2.  Count II

Count II of the Second Amended Complaint seeks a declaratory judgment stating, among other propositions, that "[t]he parties' dispute concerning the amount of Plaintiff's insured loss must be resolved through the subject insurance policy's appraisal procedure" and that "QBE is obligated to immediately select an appraiser and otherwise participate in an appraisal."  D.E. 30 at ¶¶ 43.b, 43.c.  QBE retorts that Count II must be dismissed as a "premature demand for appraisal," as 200 Leslie "does not allege that it informed QBE of [its] disagreement [with QBE's valuation of 200 Leslie's claim] before filing the lawsuit or that QBE disagreed with [200 Leslie's] position."  D.E. 31 at 8.

The Court turns to Florida law to evaluate QBE's Motion to Dismiss as it relates to Count II.  *See Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774-75 (11th Cir. 2000) ("A federal court applies the substantive law of the forum state in a diversity case, unless federal constitutional or statutory law requires a contrary result") (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991)).  In consulting Florida law, the Court first considers the rulings of Florida's Supreme Court.  *See Bailey v. S. Pac. Transp. Co.*, 613 F.2d 1385, 1388 (5th Cir.), *cert. denied*, 449 U.S. 836 (1980).[5]  Where the highest court in the state has rendered no decisions on point, however, this Court must follow

_____

[5]Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

the opinions of Florida's intermediate courts, unless it is "convinced that the highest court would decide otherwise." *Id.* (citing *Comm'r v. Bosch*, 387 U.S. 456, 465 (1967)); *Galindo*, 203 F.3d at 775. Where no disagreement among Florida's district courts of appeal exists, "[Florida] district court decisions bind all Florida trial courts." *Id.* (quoting *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (citation and internal quotation marks omitted)).

Turning to Florida law, in *United States Fidelity & Guaranty Co. v. Romay*, 744 So. 2d 467 (Fla. 3d DCA 1999) (*en banc*), the insureds had filed claims in 1992 following damage to their homes from Hurricane Andrew earlier that year. The insurer paid the insureds' claims. Four to five years later, the insureds sent the insurer notice that they disputed the amounts of loss, demanded additional compensation, and intended to invoke the appraisal clauses if the insurer failed to make payment. In response, the insurer advised the insureds that their policies required them to meet prerequisites before the appraisal clause could be triggered under the policies. Among other things, the insurer stated that the insureds were required to submit sworn proofs of loss and supporting documents, to submit to examinations under oath, and to make the properties available for inspection. None of the insureds fully complied before filing suit.

Against this background, the court considered the appropriate timing of the filing of a lawsuit seeking to compel an insurance company to participate in appraisal. The court began by recognizing that "[a]ppraisal provisions in insurance policies . . . have generally been treated as arbitration provisions." *Id.* at 469 (citing *Gray Mart, Inc. v. Fireman's Fund Ins.*, 703 So. 2d 1170, 1172 (Fla. 3d DCA 1997); *Fla. Farm Bureau Cas. Ins. Co. v. Sheaffer*, 687 So. 2d 1331, 1333 (Fla. 1st DCA 1997); *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1202 (Fla. 3d DCA 1995); *Intracoastal Ventures Corp. v. Safeco Ins. Co. of Am.*, 540 So. 2d 162, 164 (Fla. 4th DCA 1989)).

Citing Fla. Stat. § 682.03 and case law construing that provision, the Third District noted that in determining whether compelling arbitration is appropriate, a court must first find that an "arbitrable issue" exists. *Id.* (citing *Phillips v. Gen. Accident Ins. Co. of Am.*, 685 So. 2d 27, 29 (Fla. 3d DCA 1996)). As the Third District elaborated, in the context of appraisal, "[a]rbitrable issues . . . are narrowly restricted to the resolution of specific issues of actual cash value and amount of loss." *Id.* (citing *Preferred Ins. Co. v. Richard Parks Trucking Co.*, 158 So. 2d 817 (Fla. 2d DCA 1963)). Thus, the court reasoned, "It is therefore axiomatic that an arbitrable issue exists between parties whose agreement provides for appraisal when there is a disagreement in the dollar amount of the loss being claimed." *Id.*

Next, the court reviewed the appraisal clause at issue in *Romay*: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss . . . ." *Id.* In discussing this provision, the court explained,

> By these terms, the disagreement necessary to trigger appraisal cannot be unilateral. As expressly indicated in the parties' agreement, the failure to agree must be between the "you" and the "we." In other words, by the terms of the contract, it was contemplated that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist.

*Id.* at 469-70 (citations omitted). The court further approvingly quoted 14 Couch on Insurance 2d § 50:56 (1982):

> This means that the existence of a real difference in fact, arising out of an honest effort to agree between the insured and the insurer, is necessary to render operative a provision in a policy for arbitration of differences. Furthermore, there must be an actual and honest effort to reach an agreement between the parties, as it is only then that the clause for arbitration becomes operative, the remedies being successive. For example, a mere arbitrary refusal to pay the amount

> demanded, and the offer of a less amount, without any attempt upon
> the part of the insurer to ascertain and estimate the amount of loss and
> damage, do not constitute such a disagreement as is contemplated.

*Romay*, 744 So. 2d at 470 (internal quotation marks omitted).

QBE likens the provision at issue in *Romay* to that appearing in 200 Leslie's policy: "If we and you disagree on the value of the property o[r] the amount of loss, either may make written demand for an appraisal of the loss. . . ," and argues that *Romay* accordingly mandates dismissal of Count II.  Indeed, comparison of the phrases at issue in *Romay* and here reveals that they are not materially distinguishable.

Nevertheless, *Romay*'s comments regarding the meaning of a genuine "disagreement" must be read in the context of *Romay*'s holding: an insured must meet all of the policy's post-loss obligations before appraisal may be compelled.  *Romay*, 744 So. 2d at 468.  After making the remarks recounted above, the Third District went on to discuss the *Romay* insureds' post-loss obligations as outlined in the policy, such as showing the insurer the damaged property, providing the insurer with requested records and documents, and submitting to questions under oath regarding the loss.  Because the *Romay* insureds had failed to meet these post-loss obligations in response to the insurers' demands that they comply, the insurer did not have a meaningful opportunity to determine its position with regard to whether it disagreed with the insureds over the values of their losses.  Consequently, there could be no "disagreement" over the valuation.  Under these circumstances, the Third District held, "No reasonable and thoughtful interpretation of the policy could support compelling appraisal without first complying with the post-loss obligations.  If that were so, a policyholder, after incurring a loss, could immediately invoke appraisal and secure a binding determination as to the amount of loss."  *Id.* at 471.

As noted above, QBE asserts that Count II is fatally deficient under *Romay* because the Second Amended Complaint "does not allege that [200 Leslie] informed QBE of [its] disagreement [with QBE over the amount of the loss] before filing the lawsuit or that QBE disagreed with its position." June 20, 2011. D.E. 31 at 8. In other words, QBE argues that the existence of a disagreement regarding the valuation of the loss is a precondition to the invocation of the appraisal provision. While this Court agrees, that argument takes QBE only so far.

As QBE acknowledges, on October 19, 2010, 200 Leslie did "write to QBE to express that 'it disagreed with QBE's position' and to 'demand[] that this dispute . . . be resolved through the appraisal process . . . .'" *Id.* (citing D.E. 30 at ¶ 33). Although 200 Leslie sent this letter after filing suit in this case, it did so before filing the Second Amended Complaint in this matter, and to date — eight months later — QBE has not responded in any way: it has not disagreed with 200 Leslie's contesting of QBE's valuation; it has not requested documents from 200 Leslie; it has not sought to conduct an examination under oath; and it has not otherwise engaged in any apparent actions indicating that it is in the process of determining its position with respect to 200 Leslie's valuation of its purported Hurricane Wilma loss. Meanwhile, 200 Leslie has indicated its willingness to comply with all of its post-loss obligations as invoked by QBE to enable QBE to determine whether it disagrees with 200 Leslie's contestation of QBE's valuation. *See, e.g.*, D.E. 39 at 13. QBE contends that the October 19, 2010, letter amounts irremediably to too little, too late and, thus, that Count II should be dismissed with prejudice. But other cases suggest that there may be more to consider.

In *El-Ad Enclave at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 752 F. Supp. 2d 1282 (S.D. Fla. 2010) *("Enclave")*, Judge Jordan considered a case where the insured submitted a

Hurricane Wilma claim that the insurer paid in March 2006.  On January 12, 2009, the insured

provided the insurer with a sworn proof of loss regarding the insured's Hurricane Wilma damages.

In response, the insurer sent the insured a letter seeking to schedule an examination under oath and

requesting several documents.  Over the next three months, the insured made the documents

available for the insurer and scheduled the examination under oath.  Before the examination under

oath occurred, however, the insured filed suit.  After finding that a factual dispute existed over

whether the insured had satisfied the prerequisites to suit before filing the case, the court further

explained, "[I]f an insured has not demonstrated willful disregard of the policy preconditions, courts

have either stayed the action or dismissed the suit without prejudice in order to allow belated

compliance."  *Id.* at 1287 (citing *Cent. Metal Fabricators v. Travelers Indem. Co. of Am.*, 703 So.

2d 1251, 1251 (Fla. 3d DCA 1998); *Southgate Gardens Condo. Ass'n, Inc. v. Aspen Specialty Ins.

Co.*, 622 F. Supp. 2d 1332, 1337 (S.D. Fla. 2008)); *see also Jacobs v. Nationwide Mut. Fire Ins. Co.*,

2002 WL 3453222, *5, *7 (S.D. Fla. Sept. 10, 2002) (citing *USFG v. Ziegler*, 771 So. 2d 1284 (Fla.

3d DCA 2000)).  Consequently, the court concluded that dismissal was "not appropriate."  *Id.*

Considering the reasoning in *Enclave*, the Court concludes that 200 Leslie may have been

able to remedy any shortcomings in meeting its pre-filing obligations under the policy even after it

filed the lawsuit in this case.[6]  Thus, 200 Leslie's October 19, 2010, letter, which predated the filing

of the Second Amended Complaint and sought to determine whether a "disagreement" existed over

the valuation of 200 Leslie's alleged Hurricane Wilma loss, may have fulfilled that particular

prerequisite for seeking appraisal following a sufficient period within which QBE could fairly have

---

[6]Whether 200 Leslie "demonstrated willful disregard" of preconditions has not been
briefed or argued by the parties and may be an issue more appropriate for summary judgment.

been expected to respond.  Although QBE did not respond to the October 19, 2010, letter, QBE cannot simultaneously unilaterally preclude 200 Leslie's satisfaction of the "disagreement" prerequisite by ignoring the demand letter and use 200 Leslie's alleged failure to demonstrate a "disagreement" to bar suit permanently.  All that is required under *Romay* is that QBE be given a reasonable opportunity to determine whether it disagrees with 200 Leslie's contestation of QBE's valuation of 200 Leslie's loss.  In order to make that decision, QBE is entitled to require 200 Leslie's compliance with pre-appraisal obligations, should QBE wish to do so.  At some point in time, however, a complete failure to respond to 200 Leslie's contestation of QBE's valuation and to demand compliance with pre-appraisal obligations must act as an implicit "disagreement" under the policy.  Otherwise, insurers could always avoid appraisal by simply ignoring demands for appraisal.  Thus, 200 Leslie's post-initial-Complaint but pre-Second-Amended-Complaint demand letter may have set the stage for the required "disagreement" under the appraisal provision.[7]

The Court need not decide whether QBE's failure to respond to 200 Leslie's demand letter for eight months satisfies the "disagreement" prerequisite at this time, however.  Even if the lack of a response by QBE after the expiration of eight months since 200 Leslie served its demand letter meets the pre-appraisal "disagreement" requirement, Count II of the Second Amended Complaint currently remains defective, as it fails to allege anywhere that 200 Leslie has complied with all conditions precedent to seeking appraisal and it similarly does not attach a copy of the insurance policy so that the Court can evaluate whether 200 Leslie has alleged facts demonstrating that it has

---

[7]The Court does not suggest that it has made a determination at this point as to whether 200 Leslie has timely complied with all prerequisites to appraisal or suit.  Rather, the Court has considered only those issues raised by the parties in the Motion to Dismiss and corresponding response.

satisfied any other pre-appraisal requirements.

3.  Count III

QBE seeks to stay Count III of the Second Amended Complaint because the correct resolution of it turns on the Florida Supreme Court's answer to the questions that the Eleventh Circuit certified to the Florida Supreme Court in *QBE Insurance Corp. v. Chalfonte Condominium Apartment Association, Inc.*, 561 F.3d 1267 (11th Cir. 2009).

The Supreme Court long ago recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. Am. Water Works & Elec. Co.*, 299 U.S. 248, 254 (1936).  Federal courts may exercise their discretion to stay proceedings when a stay would promote judicial economy and efficiency.  *See, e.g., Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1197-98 (11th Cir. 2009) (dismissing appeal and approving of the district court's decision to stay a case pending a federal appeal in another case that the court viewed as "likely to have a substantial or controlling effect on the claims and issues in the stayed case").

In this case, Count III of the Second Amended Complaint requests a declaratory judgment finding that the deductible purporting to apply to "windstorm" losses is void for failure to not comply with the requirements of Fla. Stat. § 627.701(4)(a), which requires policies that impose separate hurricane deductibles to make specified disclosures in "boldface type no smaller than 18 points." In *Chalfonte*, the Eleventh Circuit certified to the Florida Supreme Court, the following questions, among others:

>          (3)      May an insured bring a claim against an insurer for failure to

comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a)?

(4)     Does an insurer's failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a) render a noncompliant hurricane deductible provision in an insurance policy void and unenforceable?

561 F.3d at 1275.  The Florida Supreme Court is currently considering these questions.  *See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, No. SC09-441 (Fla.).  Ultimately, the outcome of Count III will turn on the Florida Supreme Court's answers to these questions.  *See Md. Cas. Co. v. Williams*, 377 F.2d 389, 392 (5th Cir. 1967) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Shirey v. Louisville & Nashville R.R. Co.*, 327 F.2d 549 (5th Cir. 1964)) (noting that when a federal court's jurisdiction is premised on diversity, the court must apply substantive state law).  Moreover, 200 Leslie has expressed its agreement with QBE that Count III should be stayed until the Florida Supreme Court has issued its ruling on the certified questions in *Chalfonte*.

A stay would result in savings to the parties and the Court.  Not only do the parties agree with this procedure, but several other courts in this district who have considered the same or similar claims in other lawsuits have arrived at the same conclusion.  *See, e.g., Cypress Chase Condo. Ass'n "A" v. QBE Ins. Co.*, 2011 WL 1544860, *5 (S.D. Fla. Apr. 15, 2011); *Garden Aire Village S. Condo. Ass'n, Inc. v. QBE Ins. Co.*, 2011 WL 1184737, *7 (S.D. Fla. Mar. 31, 2011); *Villas at the Hammocks Condo Ass'n, Inc. v. Empire Indem. Ins. Co.*, Case No. 09-61558-CIV-COOKE (S.D. Fla. Aug. 16, 2010); *Ross Realty Invs., Inc. v. Lexington Ins. Co.*, Case No. 09-60874-CIV-COOKE (S.D. Fla. Jan. 22, 2010); *Towers of Quayside Tower I v. QBE Ins. Co.*, 10-23805-CIV-LENARD (S.D. Fla. Nov. 29, 2010); *S. Bay Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, Case No. 10-24479-CIV-ALTONAGA (S.D. Fla. Dec. 22, 2010).  Under these circumstances, the Court finds that staying

-28-

Count III is appropriate and grants QBE's Motion to Stay.

### III.  Conclusion

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that Defendant QBE's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**, and Defendant QBE's Motion to Stay Count III is **GRANTED**.  Counts I and II of the Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE**, and Count III is **STAYED** pending resolution of the Florida Supreme court's decision in *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, No. SC09-441(Fla.).  The parties shall file a status report updating the Court on the proceedings in *Chalfonte* every 45 days.

**DONE and ORDERED** this 21st day of June 2011.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record