**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**CASE NO.: 10-61984-CIV-OTAZO-REYES**

**CONSENT CASE**

200 LESLIE CONDOMINIUM
ASSOCIATION, INC.,

     Plaintiff,

vs.

QBE INSURANCE
CORPORATION,

     Defendant.

_____

**DEFENDANT QBE INSURANCE CORPORATION'S RESPONSE IN OPPOSITION**
**TO PLAINTIFF 200 LESLIE CONDOMINIUM ASSOCIATION'S**
**MOTION FOR SUMMARY JUDGMENT [D.E. 137]**

**Statement**

Defendant, QBE INSURANCE CORPORATION ("QBE"), pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, hereby files this Response in Opposition to Plaintiff 200 Leslie Condominium Association's Motion for Summary Judgment (D.E. 137, hereinafter "Motion").

**Summary of Argument**

Plaintiff has moved for summary judgment on both counts of its Third Amended Complaint.  (See D.E. 137 at p. 1)  Count I seeks a declaration that windows and sliding glass doors that provide access to single condominium units are covered property under the subject insurance policy.  (See D.E. 70 at pp. 4-7)  Count II seeks a declaration that Plaintiff is entitled to appraisal.  (See D.E. 70 at pp. 7-12)  Plaintiff is not entitled to Summary Judgment on either count.

As set forth in QBE's Motion for Summary Judgment, as a matter of law Plaintiff is not entitled to appraisal (Count II) because QBE has denied Plaintiff's claim in its

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 2 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 2**

entirety and declared the policy void.  (See D.E. 143 at pp. 7-12).  In addition, setting aside the fact that appraisal is inappropriate because of the complete denial of Plaintiff's claim, Plaintiff would still not be entitled to summary judgment on its appraisal claim because there remain issues of material fact relating to QBE's Affirmative Defenses. *See Garden-Aire Village South Condo. Ass'n, Inc. v. QBE Ins. Corp.*, Case No. 10-61985-CIV-DIMITROULEAS/SNOW, D.E. 135 (S.D. Fla. November 20, 2012), attached hereto as **Exhibit "1"**).[1]

Plaintiff is not entitled to summary judgment as to Count I of its Third Amended Complaint because there is not, and has never been, a genuine dispute between the Parties as to whether windows and sliding glass doors accessing individual units are covered property.   Moreover, any such dispute would be moot as QBE has denied Plaintiff's claim in its entirety, separate from any issue as to whether windows and sliding glass doors are covered property under the Policy. (See D.E. 143 at p. 12)  As a result, 200 Leslie's Motion as to Count I should be denied and QBE's Motion for Summary Judgment on this Count should be granted.

## Factual Background

Plaintiff initially reported damage to the subject property from Hurricane Wilma on October 28, 2005.  (See Statement of Material Facts supporting QBE's Motion for Summary Judgment, D.E. 144, ¶¶3-4).[2]  Interloss, Inc. inspected the Property on behalf of QBE on November 16, 2005.  (SF ¶5).  The amount of damage or loss to the Property was significantly less than the $610,039.00 Policy windstorm deductible.  (SF ¶6).  On or about August 25, 2007, Mr. Sansone of Interloss, Inc. prepared an estimate of damage to the subject property on behalf of QBE in the amount of $211,373.24.  Mr. Sansone's August 25, 2007 estimate did not exclude damage to windows.

Plaintiff did not communicate with QBE or its representatives any further until it filed suit in October 2010.  (SF ¶5).  QBE never communicated to Plaintiff that windows and sliding glass doors to individual units at 200 Leslie were not "covered property" under the Policy.  (SF ¶31).  Plaintiff did not communicate to QBE prior to filing suit that

---

[1] Under similar facts, the Court in <u>Garden-Aire</u> dismissed plaintiff's count seeking a declaration that windows and sliding glass doors were covered under the policy.  (See Exhibit "1" at p. 4).
[2] QBE's Statement of Material Facts will hereinafter be referred to as "SF ¶___".

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 3 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 3*

it had a disagreement with QBE as to whether the Policy insured for loss or damage to windows which provide access to individual units.  (SF ¶7).

### Procedural Background

Plaintiff originally filed its Complaint in this case on October 18, 2010.  (D.E. 1) Plaintiff alleged two causes of action.  Count I sought a declaratory judgment that windows and sliding glass doors accessing individual units were "Covered Property" under the Policy and that the Parties should be required to participate in appraisal. Count II sought a declaration that the Policy's windstorm deductible was void because the size of the font in the Policy was in violation of a state statute.  QBE then sought dismissal of Count I on justiciability and prematurity grounds. QBE sought a stay of Count II pending the Florida Supreme Court's ruling in *Chalfonte*.  Before the Court could rule on QBE's Motion to Dismiss the original Complaint Plaintiff filed a First Amended Complaint.  (D.E. 13).  By the First Amended Complaint plaintiff sought appraisal by Count I and, in Count II a declaration that the windstorm deductible provision of the Policy was void.  (D.E. 13).  On January 21, 2011, QBE again moved to dismiss the First Amended Complaint on justiciability and prematurity grounds.  (D.E. 31).

On March 15, 2011, Plaintiff filed a Second Amended Complaint.  (D.E. 30). Once again, on March 29, 2011, based upon the same arguments QBE sought dismissal of Counts I and II of the Second Amended Complaint and a stay of Count III. (D.E. 31).  On June 21, 2011, the Court dismissed Counts I and II of the Second Amended Complaint and stayed Count III. (D.E. 54).  The Court ruled that Plaintiff's claim to compel appraisal was defective because Plaintiff and had not alleged that it complied with post loss conditions under the Policy.  The Court also ruled that there was no justiciable issue as to coverage for windows to individual units because there were insufficient allegations that QBE had denied coverage as to Plaintiff's windows.  (D.E. 54 at pp. 17 and 26).

Subsequent to the Order of Dismissal, QBE requested that Plaintiff comply with the Post Loss Conditions set forth in the Policy if it sought to pursue a claim.  Plaintiff failed to comply with the Post Loss Conditions set forth in the Policy in response to

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 4 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 4*

QBE's request.  Rather, Plaintiff willfully denied some of its obligations under the Policy, intentionally refused to provide the information sought by QBE as to Plaintiff's claim, or otherwise intentionally supplied conflicting or misleading information.  As a result of Plaintiff's conduct, QBE denied Plaintiff's claim in its entirety based upon Plaintiff's failure to comply with its post obligations under the Policy, fraud, and concealment. QBE advised Plaintiff that as a result of Plaintiff's conduct the policy was void.  (SF ¶23; see also D.E. 144-7)

On July 12, 2012, Plaintiff filed its Third Amended Complaint. (D.E. 70).  On October 18, 2012, QBE filed its Amended Answer and Affirmative Defenses to the Third Amended Complaint. (D.E. 113).  QBE asserted several affirmative defenses to this cause of action; included amongst the affirmative defenses are that Plaintiff has failed to comply with conditions precedent under the applicable Policy (hereinafter "Policy") including failure to comply with applicable post loss conditions (D.E. 113 at ¶56) (First Affirmative Defense), breach of the post loss conditions set forth in the Policy (D.E. 113 ¶¶57-58) (Second and Third Affirmative Defenses), and that Plaintiff's claim should be barred due to fraud and concealment by Plaintiff of facts related to the claim (D.E. 113 ¶66) (Eleventh Affirmative Defense).

## Discussion

The lion's share of Plaintiff's Motion consists of Plaintiff's argument that there is no issue of material fact as to its compliance with post loss conditions (See Motion at pp. 2-12) `While QBE strongly disagrees with Plaintiff's argument, which will be addressed in detail below, as a preliminary matter Plaintiff cannot establish the most basic fact required to prevail on its claim for appraisal, that there is currently a disagreement as to the amount of Plaintiff's Claim which needs to be resolved in appraisal.  Rather, because QBE has denied Plaintiff's claim in its entirety there is no current disagreement as to the amount of the claim which would require appraisal. Plaintiff addresses this threshold issue only briefly on page 17-18 of its Motion. Moreover, as set forth below, Plaintiff's argument as to this point is without merit.

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 5 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 5*

### 1. Plaintiff is not entitled to Summary Judgment because QBE has denied Plaintiff's claim in its entirety

In addressing the issue of whether QBE's denial of the claim in its entirety precludes appraisal, Plaintiff contends that Judge Dimitrouleas in *Garden-Aire* rejected the argument that QBE's denial of Plaintiff's claim in its entirety precludes enforcement of an appraisal clause.  (See Motion at p. 17)     In fact, Judge Dimitrouleas relying, in large part, upon the Court's opinion in *Oceania I Condominium Association v. QBE Ins. Corp.* No-11-20578, 2011 WL 1984483 at *2 (S.D. Fla. 2011) stated that, "When an insurer denies coverage in its entirety, either for being void or for failure to comply with conditions precedent, there is no right to appraisal until the merits of these defenses are ascertained."  *Garden-Aire* at p. 6.     Plaintiff does not really contest this point, concluding that "whether QBE's denial of the claim is proper presents a coverage question that is appropriate for judicial resolution." (Motion at p. 18)   As such, it appears that Plaintiff has conceded that there cannot be appraisal until the Court has determined the validity of QBE's coverage defenses.

In *Garden-Aire,* after concluding that it could not order appraisal after the insured's claim had been denied in its entirety, the Court then took the step of amending the pleadings to include issues of whether Plaintiff complied with post loss conditions or committed fraud or concealment that voids the policy.  In doing so, the Court also noted that Defendant had requested that the Court construe the affirmative defenses as counterclaims. *Id.* at 8.     In this instance QBE has not made such a request.  Rather, reflecting upon the Court's opinion in *Oceania I*, QBE requests that, upon dismissal of the Count seeking appraisal, that the Court require Plaintiff to seek to amend its pleadings and pursue its action for breach of contract based upon QBE's denial of coverage in this case, if 200 Leslie seeks to further pursue this claim.

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 6*

**2.  In any event, Plaintiff would not be entitled to summary judgment on its claim to compel appraisal and QBE's Affirmative Defenses**

**a. Plaintiff cannot establish a disagreement with QBE over the amount of the loss**

Before addressing specific arguments made by Plaintiff as to its purported compliance, or non compliance, with post loss conditions, the Court should consider an even more fundamental fact which is an element of Plaintiff's action to compel appraisal, which it cannot establish, and which Plaintiff has not claimed to be undisputed as per its Statement of Material Facts (D.E. 138), that is, that 200 Leslie and QBE have come to a "disagreement as to the amount of the loss" as required by *United States Fid. & Guaranty Co. v. Romay*, 774 So 2d 467, 459 (Fla. 3rd DCA 1999).  As argued by Plaintiff in its Motion, "Appraisal is appropriate when there is disagreement over the amount of the loss which disagreement exists "only after 'some meaningful exchange of information." *Citing Romay* at 470.    (Motion at p. 10)

While the courts often evaluate the exchange of information in the context of compliance, or non-compliance with post loss conditions, here Plaintiff cannot even get to first base.  Plaintiff cannot establish that it has ever even determined itself an amount of its loss, let alone come to a disagreement with QBE as to that amount.  This fact is crystal clear based upon 200 Leslie's Response to Defendant's Second Request for Admissions items 10-17, 26, 27, 45-46. and the testimony of its Corporate representative Mr. Golant who unabashedly stated that 200 Leslie had "absolutely no idea" as to the amount of the claimed items which were damaged when it submitted its Sworn Statement in Proof of Loss  ("POL")  and still did not know when 200 Leslie was deposed on October 15, 2012. (Golant deposition Tr. at p. 24)  Based upon these facts, it is not surprising that 200 Leslie cannot assert that there is no issue as to the most basic material fact that 200 Leslie has come to a disagreement with QBE as to the amount of the loss.  This is so because 200 Leslie apparently cannot come to an agreement with itself as to the amount of the loss.

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 7 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 7*

### b.   200 Leslie would not be able to establish that there is no issue of material fact as to QBE's Affirmative Defenses

#### 1.   Plaintiff failed to provide prompt notice of its supplemental claim and failed to notify QBE of its claim prior to filing suit.

Plaintiff argues that there is no issue of material fact that it provided prompt notice of its claim. Specifically, Plaintiff relies upon those facts as to its initial reporting of a claim in 2005, but does not dispute that after no payment was made to Plaintiff by QBE in 2005 Plaintiff waited approximately five years before providing notice of its new claim in October 2010. (See D.E. 137 at pp. 3-4).  In fact, it is undisputed that Plaintiff was silent for approximately five years before giving notice of this new claim (QBE's response to Plaintiff's Statement of material facts, hereinafter "RSF" at ¶3) In an attempt to justify this five year delay in reporting the subsequent claim, Plaintiff contends that "There is nothing new or different about the claim as it existed in 2005, 2010, or 2012." However, the claim as it existed in 2005 was far different than the  claim asserted in 2010 which seeks payment for virtually every window and sliding glass door and other items not claimed in 2005. (Compare RSF ¶¶ 31 and 34)

In support of its Motion, Plaintiff cites *Ocean View Towers Ass'n, Inc. v. QBE. Ins. Corp.,* 2011 U.S. Dist. LEXIS 147579 (S.D. Fla. Dec. 22, 2011) for the proposition that Plaintiff's first notice of loss in 2005 satisfies the notice requirement for the supplemental claim asserted in 2010. (See D.E. 137 at p. 4).  In *Ocean View,* the plaintiff filed suit for ***breach of contract*** based upon QBE's alleged failure to properly cover damages stemming from a Hurricane Wilma loss.  *See Ocean View,* 2011 U.S. Dist. LEXIS 147579 at *10-11.  The Court granted, in part, summary judgment in favor of the plaintiff on the affirmative defense of failure to notify QBE of the loss.  *Id.* at *23-28.

However, on QBE's motion for reconsideration in that case, the Court stated that decisions cited by QBE regarding post-loss obligations arising in supplemental claims were inapposite as "[e]ach of them concerned requests for appraisal and declaratory relief, and their decisions were tethered to the nature of the relief requested and the specific policy language appearing in the appraisal section of the insurance contract."

Case 0:10-cv-61984-AOR Document 162 Entered on FLSD Docket 12/21/2012 Page 8 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 8**

See *Ocean View Towers Ass'n v. QBE Ins. Corp.*, 2012 U.S. Dist. LEXIS 9, *3 (S.D. Fla. Jan. 1, 2012). The Court further noted that the **p**laintiff "does not seek an appraisal and has not asked for declaratory relief. Instead, [plaintiff] has filed suit for breach of contract." *Id*. In this case, given the remedy sought, there is no basis to conclude that notice of the initial claim satisfied Plaintiff's obligation to give prompt notice of the subsequent claim.[3]

### 2. Plaintiff failed to provide a sworn statement in proof of loss containing the information requested by QBE.

Plaintiff also contends that there is no issue of material fact that it fully complied with its post loss obligation to provide a sworn statement in proof of loss ("POL"). (See Motion at pp. 4-6). Plaintiff's argument is predicated upon the basic fact that it did submit a POL to QBE. (Motion at p. 4) However, Plaintiff failed to provide a POL containing the information requested by QBE. The insurance contract provides that Plaintiff "send us [QBE] a signed, sworn proof of loss containing the information we [QBE] request to investigate the claim. You [Plaintiff] must do this within 60 days after our [QBE's] request. We will supply you with the necessary forms." (See D.E. 70-1 at p. 37). On June 22, 2011, QBE requested Plaintiff provide a POL and provided a POL form. (See D.E. 144-3 at pp. 7-12; D.E. 144-5 at p. 4, ¶ 19). On August 4, 2011, Plaintiff provided a POL in the "Whole Loss and Damage" amount of $10,934,677.49 and a claimed amount of $10,324,638.49. (See D.E. 144 at p. 4, ¶ 12; see also D.E. 144-3 at p. 13; D.E. 144-5 at p. 4, ¶ 20; D.E. 137-3). However, Plaintiff crossed out some of the standard language contained on the POL which provided that no items are included in the POL or attached schedules "but such as were destroyed or damaged at the time of said loss." (See D.E. 144 at p. 4, ¶ 12; see also D.E. 144-3 at p. 13; D.E. 144-5 at p. 4, ¶ 20). In short, the POL did not supply the information sought by QBE and obfuscated completely what Plaintiff claimed to have been damaged.

---

[3] QBE additionally notes that Plaintiff's cites to *Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*, Case No. 11-60601-CIV-SEITZ/SIMONTON, D.E. 138 (S.D. Fla. April 26, 2012). [See D.E. 137 at p. 4]. The Order in *Summit Towers* is attached to Plaintiff's motion as Exhibit "B". [See D.E. 137-2]. However, the holding in *Summit Towers* is based on the initial order, and not the subsequent decision, issued in *Ocean View*. [See D.E. 137-2 at p. 7].

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 9 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 9*

Plaintiff now argues that its claim includes both damaged and undamaged property and could not, therefore, provide a POL in the total amount claimed without deleted the standard language. Plaintiff further claims that QBE's objection to the POL is based upon the fact that the POL did not specify which items were included in the POL as a result of damage and which were the result of "ordinance and law" coverage. (Motion at p. 5) However, QBE's objection has nothing to do with "ordinance and law" coverage. [4] Moreover, the deficiency with the POL is that it failed to identify which property was damaged. The POL stated that "The whole loss or damage was $10,934,677.49" (RSF ¶34) By crossing out the language that only damaged items were included in the POL Plaintiff failed to provide the information requested by QBE. In *Garden-Aire* QBE raised the exact same argument. On cross motions for summary judgment the Court denied the motions noting that "It is a question of fact whether Plaintiff's original proof of loss contained so many errors as to be essentially no proof of loss at all." *Id* at p. 8.

Moreover, there are a number of facts that indicate that Plaintiff's failure to supply the requested information in the POL was exacerbated by Plaintiff's subsequent failure to provide an inventory of damaged and undamaged property in support of the POL in response to QBE's repeated requests. (See RSF ¶¶36-39) Therefore, there is substantial factual support to support the affirmative defense raised by QBE that the POL was materially deficient. As a result Plaintiff is not entitled to summary judgment on its contention that it complied with the POL requirement.

   **3. Plaintiff failed to comply with the examination under oath provision by not providing a person for examination with knowledge of the insurance or subject claim, and for refusing to provide additional witnesses.**

Plaintiff also argues that there is no issue of material fact that it complied with the Examination Under Oath ("EUO") requirement of the Policy. Plaintiff argues that it

---

[4] Plaintiff seeks to minimize the failure to identify damaged items by asserting that any undamaged items included in the POL were covered and should be included in the POL. In fact, there is no valid basis to support such an assumption. Rather portions of the Policy cited by 200 Leslie provide no colorable argument for the inclusion of undamaged windows and sliding glass doors in the POL, especially replacement value for items of those items which have not been replaced (*See Summit Towers v. QBE*. 11-60601-Civ. Seitz/Simonton D.E. 153 at p. 8-9 and D.E. 211 at p. 2-3)

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 10 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 10**

satisfied its contractual obligations under the Policy by providing Mr. Vilain for the EUO, and that while this witness did not know all of the answers to the questions posed by QBE, he was the most appropriate representative for the EUO. (Motion p. 6-7)   in fact, there is overwhelming evidence that the witness knew nothing about the claim, did nothing to prepare for the EUO, and provided virtually none of the information requested by QBE during the EUO. (RSF at ¶¶ 40-50)

Plaintiff argues that there is no evidence that the witness failed to provide any information that the association had at the time or that there is no information known to 200 Leslie which it refused to provide QBE at the time. (Motion at p7)  In fact, the facts subsequently developed in discovery prove this statement to be false.  Rather 200 Leslie through its agents were purportedly aware that an inspection had taken place and that 200 Leslie's agent had concluded that over thirty percent of the windows and sliding glass doors were damaged and that Plaintiff was contending that other windows and sliding glass doors were covered purportedly based upon certain policy provisions. (See RSF at ¶55) All of this was testified to subsequently by Mr. Golant as the corporate representative.  200 Leslie provides no legal or factual basis to support its failure or refusal to disclose this information during the EUO, especially since it was specifically requested by QBE.

Plaintiff raises one other argument as a basis to support its claim that there is no issue of fact as to whether it complied with the EUO provision.  Plaintiff in seeking to justify the failure to provide information known to its agents and representatives during the EUO refers to individual board members or officers as the "insureds" and claims that "QBE admits that it does not have any evidence showing that there was another insured who had more knowledge than Mr. Vilain or that Mr. Vilain refused to provide any information that he association had at the time." (Motion at pp. 7-8)   This argument completely misses the mark.  The insured in this case is not Mr. Vilain.  Rather, the insured is 200 Leslie.   The issue is not whether Mr. Vilain purposefully withheld information.  Rather the issue is whether 200 Leslie withheld information.  The facts indicate that it did.

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 11*

Plaintiff's other argument is that 200 Leslie satisfied the EUO requirements of the Policy because those requirements are not as rigorous as the requirements for a Rule 30 (b) (6) deposition.    (Motion at p.  6-7)    In fact, the obligations of the insured to provide information during the EUO are greater than the obligations under the federal Rules. The obligation to sit for an examination under oath is contractual rather than arising out of the rules of civil procedure.  *Goldman, 6*60 So. 2d at 305 (holding that depositions may not substitute for an EUO).  Examinations under oath are taken before litigation to augment the insurer's investigation of the claim.  *Id*.  An insured has a ***duty to volunteer information related to the claim*** during an examination under oath in accordance with the policy.  *Id.* (emphasis added).

The insurance contract provides that "[w]e [QBE] may examine ***any insured under oath***, while not in the presence of any other insured and ***at such times as may be reasonably required***, about ***any matter relating to this insurance or the claim***, including an insured's books and records."  (See D.E. 70-1 at p. 37) (emphasis added). Richard Vilain sat for deposition on December 20, 2011, but he did have any information as to how many windows and sliding glass doors at Plaintiff's property were damaged by Hurricane, did not have such information prior to executing the sworn statement in proof of loss ("POL"), he did not know or attempt to discover what items were not damaged by Hurricane Wilma (but are nonetheless included in Plaintiff's claim), he knew nothing about the claim prior to July 2011, and ***he only reviewed the POL and window cost estimate for five (5) minutes on the morning of his EUO***. (See D.E. 144 at p. 6, ¶¶ 17-21; see also D.E. 144-4) (emphasis added).[5]

At the conclusion of the EUO, QBE informed Plaintiff's counsel Jeffrey Golant that QBE had some issues with the limited scope of Mr. Vilain's knowledge.   In response, Plaintiff's counsel advised that Mr. Vilain's testimony discharged Plaintiff's duty to submit to an EUO.  (See D.E. 144-4 at p. 94 – EUO of Richard Vilain at p. 94, ln. 2-13).  Plaintiff's failure to provide the requested information during the EUO and its subsequent refusal to correct the deficiency in its EUO testimony constitute a failure to comply with its obligations under the insurance contract. As a result, Plaintiff cannot

---

[5] Curiously, during the subsequent course of litigation, Plaintiff produced attorney Jeffrey Golant as its corporate representative for deposition.  [See D.E. 123].

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 12**

properly assert that there is no issue of material fact that it had complied with the EUO requirement. *See Garden-Aire* at p. 8 ("it is a question of fact whether Plaintiff's representative knew so little at the examination under oath that Plaintiff's participation was insufficient.")

### 4. Plaintiff failed to provide an inventory of damage and undamaged property.

Plaintiff also contends that there is no issue of material fact that it has not violated the inventory provision of the Policy. (Motion at p. 8-9)  The insurance contract provides that, at QBE's request, Plaintiff must give QBE "complete inventories of the damaged and undamaged property" and "[i]nclude quantities, costs, values and amount of loss claim."  (See D.E. 70-1 at p. 36).  On September 3, 2011, QBE requested that Plaintiff provide the number of windows and sliding glass doors damaged by Hurricane Wilma and a list of damaged and undamaged windows and sliding glass doors by unit number.  (See D.E. 144-3 at pp. 29-31; D.E. 144-5 at p. 6, ¶ 30).  QBE reiterated its request on November 28, 2011.  (See D.E. 144-3 at pp. 33-35; D.E. 144-5 at p. 6, ¶ 31).  Plaintiff provided an estimate prepared by Taylor Contracting and Roofing, Inc. ("Taylor Estimate") in the amount of $10,700,771.22 accompanied by a WindReady Impact Glazing Retrofit Proposal in the amount of $7,907,403.43 ("WindReady Estimate").  The total cost of the WindReady Estimate is entered as a sole line item on the Taylor Estimate described as "Remove and replace Windows, per Wind ready proposal." However, Plaintiff did not provide the inventories of damaged and undamaged property requested by QBE.  Thus, Plaintiff failed to comply with this condition precedent and Section I of Plaintiff's motion should be denied.

Plaintiff has acknowledged that it has failed to provide an inventory setting forth the damaged and undamaged property.   Plaintiff's remaining argument that the "inventory" requirement is inapplicable to this claim.   Plaintiff argues that the word "inventory" as defined by Black's Law Dictionary means a "detailed list of assets." (Motion at p. 8)  Plaintiff's motion attempts to limit the definition of "inventory" in a tortured argument based on definitions from Black's Law Dictionary.  (See D.E. 137 at p. 8).  However, Plaintiff would have the Court interpret the policy as not requiring an

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 13 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 13*

inventory to include damaged property except for "cash, inventory, equipment, real estate, accounts receivable, or goodwill." (See D.E. 137 at p. 8). Contrary to Plaintiff's technical interpretation of the policy, insurance contracts are construed according to their plain meaning under Florida law. *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.,* 913 So. 2d 528, 532 (Fla. 2005). Plaintiff's interpretation would eviscerate the purpose of the provision and would render the provision meaningless by not requiring any specification of those building components which an insured alleges to be damaged and undamaged. Moreover, the meaning proposed by Plaintiff is contrary to the language within the Policy that requires an inventory of "damaged and undamaged property."

The reference to property also is not limited by the terms of the Policy to personal property. Plaintiff cites a 1916 New York case from the equivalent of a circuit court indicating that the inventory requirement of the subject policy referred only to personal items. A review of the decision makes clear that the language in the subject policy in the New York case differs from the language in the Policy at issue here. As a result the case is clearly distinguishable. Again, referencing the *Garden-Aire* case wherein the same issue was presented, the Court indicated that "It is a question of fact whether Plaintiff's response to a request for an inventory of all damaged property was insufficient. *Id* at p. 8.

### 5. Plaintiff's arguments as to prejudice do not support summary judgment

Plaintiff argues that QBE must demonstrate prejudice to avoid participation in the appraisal process. (See Motion at p.12) (citing *Ramos v. Northwestern Mut. Ins. Co.,* 336 So. 2d 71 Fla. 1976). Plaintiff's argument as to prejudice does not support summary judgment. Plaintiff fails to set forth facts which support the contention that there is no issue of fact that QBE did not suffer prejudice. In addition, the insurer need not show prejudice to prevail on its affirmative defense if it is demonstrated that the insured failed to comply with a condition precedent under the Policy. *Ramos* cited by Plaintiff involved a breach of the lack of cooperation clause in an insurance policy, not the breach of a condition precedent. Id. at 75. There is a distinction under Florida Law

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 14**

between *conditions precedent,* on the one hand, and *cooperation* and *notice* clauses, on the other.  See *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.,* 649 F. Supp. 2d 1363, 1369 (S.D. Fla. 2009); see also *Goldman,* 660 So. 2d at 303. Cooperation clauses are less onerous on insured parties because courts will reject defenses based on alleged material breaches of cooperation clauses if the insurer cannot demonstrate "substantial prejudice" from the breach. *Coconut Key*, 649 F. Supp. 2d at 1369. However, the insurer need not show prejudice when the insured breaches a condition precedent to suit.  *Id.* (citing *Goldman*, 660 So. 2d at 303).

Finally, Plaintiff's argument as to lack of prejudice is inconsistent with Florida law. The brunt of Plaintiff's argument is that QBE had enough information to make an independent determination of the amount of Plaintiff's loss based upon inspections of the property and documents.   (Motion at p. 11)  Here Plaintiff seeks to write those provisions out of the Policy which require the insured to actively provide the insurer with relevant information about its claim via the POL, EUO, and required inventory.  There is no legal support for this proposition. In fact, the requirements that the insured provide information to the insurer via EUO, POL, and inventory are those which are deemed to be conditions precedent.  It is the failure to comply with these provisions which require denial of the claim if the insured fails to comply.  As the Court stated in one of the most widely cited Florida cases relating to post loss conditions, *Goldman v. State Farm,* 660 So 2d 300 (Fla. 4th DCA 1995) (*citing Claflin v. Commonwealth Ins. Co.* 110 U.S. 81 (1884)) the purpose of the EUO "is to enable the insurer to possess itself of all knowledge and all information as to other sources and means of knowledge, in regards to the facts, material to its rights, to enable it to decide upon its obligations and to protect it against false claims." *Id.* at p. 306.

The Policy clearly provides QBE with the right to obtain the information known to 200 Leslie relating to its claim. However, the facts indicate that 200 Leslie made every attempt to deny QBE this information.  The most striking evidence of this fact comes from the comparison between the testimony of 200 Leslie at the EUO and the information reluctantly disclosed by 200 Leslie during its later deposition in this case.

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 15 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 15**

**c. Plaintiff's inflated claim and refusal to comply with conditions precedent by concealing information requested by QBE presents issues of facts regarding fraud and concealment.  Thus, Section IV [*sic*] of Plaintiff's motion should be denied.**

Plaintiff also claims that it is entitled to summary judgment as to QBE's fraud and concealment defense. Because allegations of fraud and concealment necessarily include the element of the intent of the person alleged to have committed the fraud, allegations of fraud are not generally susceptible to resolution on summary judgment and often are considered a jury question. See *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 750 F. Supp. 2d 1346, 1356 (S.D. Fla. Sept. 17, 2010) (denying plaintiff motion for summary judgment on an insurer affirmative defense for concealment, misrepresentation, or fraud).  For this reason, QBE has not sought summary judgment on its fraud affirmative defense.  (See D.E. 143).  Similarly, the fraud affirmative defense is not susceptible to summary judgment in favor of Plaintiff in this case.  See *Royal Bahamian,* 750 F. Supp. 2d at 1348; [see also D.E. 137-2 at p. 13]; (Exhibit "1").

Summary judgment is not appropriate to resolve a fraud claim under Florida law. *Siever v. BWGaskets, Inc.,* 669 F. Supp. 2d 1286, 1295 (M.D. Fla. 2009) (citation omitted) (denying summary judgment on fraud-in-the-inducement claim).  "[T]he issue of fraud is not a proper subject for summary judgment since fraud generally requires a full explanation and exploration of the facts and circumstances of the alleged wrong.  A court can seldom determine the presence or absence of fraud without a trial or evidentiary proceeding," *Robinson v. Kalmanson,* 882 So. 2d 1086, 1088 (Fla. Dist. Ct. App. 2004) (internal citations omitted) (reversing summary judgment on issue of fraud, misrepresentation or other misconduct); see *Nessim v. DeLoache,* 384 So. 2d 1341, 1344 (Fla. Dist. Ct. App. 1980) ("The issue of fraud is not ordinarily a proper subject for summary judgment because, being a subtle matter, fraud requires a full explanation of the facts and circumstances of the alleged wrong to permit a determination whether they collectively constitute fraud.").  As a result, "[s]ummary judgment is available in fraud cases only in extraordinary circumstances." *Stephens v. Kies Oil Co., Inc.,* 386 So. 2d 1289, 1290 (Fla. Dist. Ct. App. 1980). The same is true when fraud is asserted

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 16 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 16**

as an affirmative defense. See *Public Health Trust of Dade Cnty. v. Prudential Ins. Co.,* 415 So. 2d 896,897 (Fla. Dist. Ct. App. 1952) ("The affirmative defense of fraud is usually considered a jury question and is not ordinarily appropriate for summary judgment proceedings.").

The Eleventh Circuit has noted that questions raised by an insurer's misrepresentation defense "are traditionally reserved for the jury." *Dempsey v. Auto Owners Ins. Co.,* 717 F. 2d 556, 560 (11th Cir. 1953) (assessing a misrepresentation defense in the context of Alabama law). Florida's Third District Court of Appeal has echoed that view, holding that it would have been error for a trial court not to submit to the jury the issue of whether an insured made a material misrepresentation. See *Lopes v. Allstate Indem. Co.*, 873 So. 2d 344, 347 (Fla. Dist. Ct. App. 2004); see also *Guthartz v. Park Centre W Corp.,* 2009 WL 278960, *4 (S.D. Fla. 2009) ("[E]quitable estoppel requires establishing proof of fraud, misrepresentation or some other affirmative deception, which is yet another inquiry inappropriate at the summary judgment stage."); *Lamm v. Prudential Ins. Co. of Am.,*179 So. 2d 238, 239 (Fla. Dist. Ct. App. 1965) ("In general, in suits on insurance contracts, if the evidence is susceptible of different inferences, the question of whether there has been misrepresentation, concealment, or a breach of warranty or condition, is one of fact, for resolution by the jury.").

Other issues relevant to QBE's defense also are for the jury. Materiality, for example, is a question of fact, and what "constitutes a material misrepresentation which would void coverage should be determined by the trier of fact." *Haiman v. Fed. Ins, Co.,* 798 So. 2d 811, 811-812 (Fla. Dist. Ct. App. 2001). As a general rule, a party's state of mind, such as knowledge or intent, also is a question of fact to be determined at trial. *Chanel, Inc. v. Italian Activewear of Fla.,* Inc., 931 F. 2d 1472, 1476 (11th Cir. 1991). Specifically, "intent is a question of fact and therefore not easily resolved on a motion for summary judgment, especially when all inferences must be drawn in favor of . . . the non-moving party," *Guthartz*, 2009 WL 278960 at *4 (finding that factual disputes, including on intent, precluded summary judgment); see *Whittimore v. Cruce*, 479 So. 2d 761, 763 (Fla. Dist. Ct. App. 1985) ("Since the issue of intent is rarely suited to resolution by motion for summary judgment, and since we find there to be a genuine

Case 0:10-cv-61984-AOR   Document 162   Entered on FLSD Docket 12/21/2012   Page 17 of 21

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
**Defendant's Response to Plaintiff's Motion for Summary Judgment**
**Page 17**

issue of material fact on the question of delivery, wo hold that the trial court erred in entering summary judgment for appellees.").

Under Florida law, intentionally submitting an inflated and exaggerated claim is fraud.  In *Schneer v. Allstate,* 767 So. 2d 485 (Fla. 3d DCA 2000), coverage for the entire hurricane damage claim to a home was deemed void due to inflation of the amount of just one aspect of claim.   Accordingly, intentionally misrepresenting or inflating the amount of the loss in a Sworn Statement in Proof of Loss as to any aspect of the claim voids the entire coverage. See also *Wong Ken v. State Farm*, 685 So. 2d 1002 (Fla. 3d DCA 1997) (summary judgment for insurer was affirmed and case remanded to trial court to determine whether insurer was entitled to repayment from insured of over one million dollars advanced for dwelling repairs after Hurricane Andrew because insured submitted fraudulent claim for $85,000.00 for living expenses).   In addition, subsequently revising or reducing the claim after it has been presented to the insurer does not cure the fraud.  See *Schneer*, 767 So. 2d at 488; see generally *Aspen Speciality Ins. Co. v. River Oaks of Palm Beach Homeowner's Ass'n, Inc.,* 2012 U.S. Dist. LEXIS 111190, *15-16 (S.D. Fla. Aug. 8, 2012) (finding there existed genuine issues of material fact as to whether plaintiff intentionally concealed or misrepresented facts during the claim investigation process); (D.E. 137-2 at p. 13) (denying summary judgment on fraud defense).

In the instant case, Plaintiff actively sought to conceal and misrepresent its claim by failing to provide notice prior to filing suit and by failing to comply with conditions precedent when given an opportunity after this Court dismissed the Second Amended Complaint.   Instead, Plaintiff filed an inflated POL after deleting standard language quantifying the amount as Plaintiff's entire claim and without providing any supporting inventory despite QBE's requests for same.  Further, Plaintiff has failed to supply the requested information during an EUO and volunteer information, despite its contractual obligation to do so.  Thus, Plaintiff has concealed and/or misrepresented its claim and Plaintiff's motion should be denied as there exist genuine issues of material fact.

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 18*

### 3.  QBE's additional affirmative defenses and not insufficient on their face and Section VI [*sic*] of Plaintiff's motion should be denied.

Plaintiff argues that various affirmative defenses are insufficient and should be dismissed.  (See D.E. 137 at pp. 16-18).  Specifically, Plaintiff argues that QBE's Seventh Affirmative Defense is not properly before the court.  (See D.E. 137 at p. 16).  However, QBE's Seventh Affirmative Defense presents a defense to coverage.  Accordingly, this defense should be resolved by the Court prior to any appraisal of the amount of loss.  (See Exhibit "1" at p. 11) (denied plaintiff's motion to summarily dismiss an affirmative defense that plaintiff's claim is limited to actual cash value).

The Ninth Affirmative Defense states that Plaintiff's failed to state claims upon which relief can be granted.  (See D.E. 113 at pp. 11-12).  Moreover, if there ever was such a controversy as to coverage for windows and sliding glass doors it is now moot as QBE has not, and does not deny, that windows and sliding glass doors are covered property.  Moreover, there is no need for a determination as to whether windows and sliding glass doors are covered property because QBE has denied the claim in its entirety. To the contrary, Plaintiff did not communicate to QBE that it had a disagreement as to whether the policy insured for loss or damage to windows prior to filing suit, and QBE has never communicated to Plaintiff that windows and sliding glass doors are not covered property under the policy.  (See D.E. 144 at ¶¶ 7 and 30).  QBE agrees that windows and sliding glass doors are covered property.  Thus, the Court should not dismiss the Ninth and Eleventh Affirmative Defenses.  (See Exhibit "1" at p. 11) (holding this affirmative defense did support a finding that a nearly identical claim, seeking a declaration that windows and sliding glass doors were covered by insurance, was moot).

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 19*

Respectfully submitted,

Berk, Merchant & Sims, PLC

**/s/ Evelyn M. Merchant**
William S. Berk
Florida Bar No. 349828
wberk@berklawfirm.com
Evelyn M. Merchant
Florida Bar No. 488577
emerchant@berklawfirm.com
William Xanttopoulos
Florida Bar No. 0997668
wxanttopoulos@berklawfirm.com
2 Alhambra Plaza, Suite 700
Coral Gables, Florida 33134
Telephone: (786) 338-2900
Facsimile:  (786) 338-2888
*Co-Counsel for QBE Insurance Corporation*

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 20*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 20, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of notices of electronic filing generated by CM/ECF or in some other  authorized manner for those counsel or parties who are not authorized to receive electronically notices of electronic filing.

**/s/William Xanttopoulos**
William Xanttopoulos

## SERVICE LIST

Raoul G. Cantero, Esq.
rcantero@whitecase.com
**WHITE & CASE LLP**
Wachovia Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, Florida  33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
*Co-Counsel for QBE Insurance Corporation*

Amy DeMartino, Esq.
ademartino@wickersmith.com
William F. Fink, Esq.
wfink@wickersmith.com
Damien D. Daley, Esq.
ddaley@wickersmith.com
**WICKER, SMITH, O'HARA, MCCOY & FORD, P.A.**
P.O. Box 2508
West Palm Beach, FL 33401
Phone: (561) 689-3800
Fax: (561) 689-9206
*Co-Counsel for QBE Insurance Corporation*

*200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*
*Defendant's Response to Plaintiff's Motion for Summary Judgment*
*Page 21*

William F. Merlin, Esq.
wmerlin@merlinlawgroup.com
Jean F. Niven, Esq.
jniven@merlinlawgroup.com
William C. Harris, Esq.
charris@merlinlawgroup.com
Douglas L. Grose, Esq.
dgrose@merlinlawgroup.com
**MERLIN LAW GROUP, P.A.**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL  33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692
*Co-Counsel for 200 Leslie Condominium Association, Inc.*

Jeffrey N. Golant , Esq.
jgolant@jeffreygolantlaw.com
**THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.**
1000 W. McNab Road, Suite 150
Pompano Beach, Florida  33069
Telephone: (954) 942-5270
Facsimile:  (954) 942-5272
*Counsel for 200 Leslie Condominium Association, Inc.*